I'm not going to try to pronounce your name because I'll get it wrong. You got it right last time. I'm surprised I tried. Did I say period? Did I say you said period? And that is correct? Okay. Welcome back. Thank you. May it please the court, Brett appearing on behalf of Michael Kay. The obstruction guideline is carefully calibrated to limit its application based on the defendant's intentions and the effect that that conduct had upon an investigation. So hiding evidence ordinarily counts, but not if it's done contemporaneously, unless it materially hinders. Lying to law enforcement normally doesn't count unless it significantly impedes. Just so with the guideline governing pre-investigation conduct. It only applies if the conduct was purposefully calculated and likely to thwart. The district court erred in finding that Mr. Kay's conduct was likely to thwart any future investigation, and so the court should reverse. And that finding is reviewed for clear error, right? The factual findings are reviewed for clear error. As discussed in the briefing, the standard of review is actually subject to inter and intra circuit conflicts. So I think the best view of the evidence of the standard of review might be that the factual findings underlying it are reviewed for clear error. But there might be a case to be made that there's de novo review of whether those facts rise to the level of likelihood to thwart. But I agree that this is a fact bound determination. Well, if we conclude that it was at least permissible on this record to conclude that the police searching the vehicle would judge judge Sam's finding was that hiding the gun under the back cover behind the spare tire is what was likely to thwart, right? That is correct. And if we think that that finding is at least permissible on this record, we would have to say it's not clearly erroneous. Is that correct? Yes. I think that's almost tautological that, you know, if I lose, I lose. Right. But but is that I mean, I see that as the key finding in this case. Yes, that is the key finding in this case that somehow and the government talks about that in its brief as well, that somehow this triple hiding taking three steps is what does it. But my response to that would be for hiding something three different ways to be likely to thwart anything. At least one of them has to be likely to hinder the police for even a moment. So the hypothetical I have is, you know, right now, if I opened this panel, which I'm not going to do because there are a bunch of electronics I checked earlier. But if I opened it and placed my outline and you can't really see what my hands are doing and placed it behind that and then to make it extra secure, put a piece of paper on top of it. There is absolutely no likelihood that if anyone came to search this podium for my outline, that they'd be hindered for a moment. Even though I did three things to hide it, they were all strikingly ineffectual. And I would also like to point out that in volume two at page 50, when the prosecutor is describing it, sentencing how this gun was hidden, she said it was in the trunk under the cover and partially tucked behind the spare tire. So it sounds as though based on that record, the minute you open the cover, you could see it because it was only partially tucked behind the spare tire. So these were three strikingly, well, really only two, because the district court acknowledged that putting it in the trunk wasn't enough. So we're really resting on behind the back cover and partially tucked behind the spare tire. So immediately visible. And that simply cannot be a finding that's supported by this record, given the fact that the Strickland's watched Mr. Kay open the trunk. They couldn't see him put the gun in the trunk. But this was shortly after the incident took place. Mrs. Strickland said they'd only gone about half a mile when she looked in her rearview mirror and saw him pulling over and opening the trunk. And all of this was conveyed to the officers. So when the officers arrived at the scene, they had every reason to suspect, especially since Mr. Kay immediately confessed, yeah, there was a road rage incident, but it was just a knife. So they had every reason to suspect that the gun was in the trunk. And as mentioned in the briefing, any conceivable search, whether they arrested Mr. Kay because he admitted he'd been in a road rage incident and threatened somebody and he had a child in the car, maybe they would have arrested him on some kind of child endangerment theory. An inventory would have discovered that gun immediately, based on all of this court's precedent. If they based it on his consent search and once they found drugs in the passenger compartment, they had probable cause to search the trunk. Consent search are incredibly thorough. Or whether they just had probable cause based on what they'd already heard. There was absolutely no possibility that a gun this ineffectually hidden was going to thwart an investigation, even for a moment. Now, the government does have a theory that Mr. Kay's actions took place actually during an investigation. Now, my reply brief discusses at great length their contention that pre-amendment guidelines cases resolve this issue. But there's also another issue, another theory that government advances that I want to touch on briefly. The government seems to suggest in several parenthetical comments that dispatch somehow deputized the Strickland's so that a law enforcement investigation was going on. And the government relies for that supposition on a paragraph in the PSR, paragraph 8, which does in fact give that as the chronology. That dispatch directed the Strickland's to follow him and after that, they saw Mr. Kay pull over. But there are both factual and legal problems with this subsidiary theory that the government advances. That's part of the PSR was never adopted as a factual finding by the district court. And the reason that nobody gave their attention to it, there was no reason for the district court to adopt it. Is the government advanced the pre-investigation theory below in its briefing and an oral argument. And so no one in the defendant agreed that this was pre-investigation conduct. So no one can ask you a question about about that. So are you saying the court didn't rely on it or it explicitly rejected it? The court didn't rely on it. But it wasn't objected to. It wasn't formally objected to. There was no objection to that. It was contradicted. Both in the defendant's briefing and then at sentencing in Volume 2 at page 59, Mr. Kay's attorney read from Jacob Strickland's, the one who was on the phone with dispatch, read from his witness statement and said, yeah, Mr. Strickland talked, he called 911 and then he talked to a couple of people and then they were directing him what to do. And then defense counsel paraphrased and said, so they were directing him who to talk to. And all of this happened after my client had already hidden the gun. So the. So it's not it's not even clear whether the conversation there was a conversation. Well, it's not clear whether he called 911 before or after the gun was hidden. I think it's clear that he called 911 before the gun was hidden. But it was a very short timeline. And the prosecutor did not object to defense counsel's summary of Mr. Strickland's witness statement. And so there was apparently a broad agreement as to this chronology. But again, no one paid attention to this fact because it wasn't part of the government's theory and it was the government's burden. What tells us, in your view, that the district court understood that we were operating under note one of 3C1.1? Oh, because the district court explicitly responded to defense counsel's argument that this was pre-investigation conduct and so it wasn't likely to thwart. And the district court said, well, yeah, if you just put it in the trunk. But instead, he put it under the cover behind the tire. But did the district court use the likely to thwart language? The district courts, I'm not sure if he said the words likely to thwart. But it's your position that there's just no reason to think that the district court thought this was anything but pre-investigation. No, no one argued that. And the district court's express ruling was because it was triply hidden, therefore the enhancement applies. So there's no reasonable reading of this record that has the district court finding anything other than this was pre-investigation conduct. So, you're saying we should just not consider the alternative argument raised by the government? Or would that be appropriate on rename? And the facts could be determined regarding the chronology and then the court could rule on whether this satisfied the requirements for a during investigation. Well, I think it's clear that this court shouldn't exercise its discretion to consider an alternate ground on this record. Because, as I've mentioned, it fails every one of the Elkins factors. It wasn't briefed and argued below and above. The factual record wasn't developed. So if we adopt your argument on the pre-investigation, should we then remand with the possibility of reaching a similar result or the same result? I'm inclined to say no, they shouldn't remand and have new evidence. This case isn't on all fours with the cases in which this court has said the government shouldn't get a second bite at the apple, but it's close. Well, we almost always remand sentencing for reconsideration. But not for new evidence. I mean, this court often limits the remand under the principle that the government shouldn't have a second bite at the apple when it was their burden below. They could have built this record. And there's reason to believe that the record wouldn't go their way. So I think given that it was their burden, given that they advanced this argument below, if they were asking for a reversal instead of affirmance, we'd be in invited error territory. The government actively pursued this theory, and it was their burden. So I don't think remand is appropriate for new evidentiary hearing. But the court does have discretion to either limit the mandate or not limit the mandate. If there are no further questions, I'll save the remainder of my time for rebuttal. Thank you. Thank you. Good morning, and may it please the court. Joseph Palmer for the government. The sentencing guidelines provide for a modest two-level enhancement when defendants obstruct or attempt to obstruct justice with respect to the investigation. And the district court did not clearly err in finding that the defendant's conduct was sufficiently likely to thwart the investigation. If I could briefly just begin with the standard of review. In our view, the standard of review is clear error, even as to the ultimate question of whether the enhancement applies. But we're here dealing with the subordinate factual determination of whether conduct was sufficiently likely in the circumstances of a particular case to in some way thwart the investigation. That is a subordinate, fact-bound, classic district court question on which this court should defer to the district court's determination unless it's clearly erroneous. In this case, the district court's determination that it wasn't inevitable that the defendant's plan of concealing the gun would be inevitably discovered. In the circumstances of this case, recall that the defendant has just completed a road rage incident in which he's threatened victims with a gun. And it's reasonable, of course, that police will shortly be on the scene. And so his plan, which is a plausible one, is to quickly pull over, stash the gun as deeply into the trunk as he can, underneath the back cover and behind the spare tire, get back on the road. And then when the police pull him over, try to misdirect their attention by having a knife in his hand. Well, counsel, your recitation so far, I agree with you on the standard of review mostly, but doesn't deal with the very unusual facts of this case that make it seem, at least to me, that the gun's discovery was inevitable, certainly inevitable. You have a really unusual confluence of facts here, don't you, with the Strickland's involved and the play-by-play to the dispatch and just sort of, can you account for how your position, we should endorse your position on the facts given all of the facts here? Well, the facts that determine the likelihood of the defendant's, call it likelihood of success, of thwarting the investigation in some way, should be determined based on the facts at the time that the defendant makes his decision to obstruct justice by concealing the gun. And at that time, his plan seems to be to misdirect the police when they pull him over to his own immediate person by gesturing with the knife instead of a gun and denying that he has a gun. And also hoping that their attention would focus on his immediate person and the passenger compartment of the car because it will appear that he's been on the road the entire time. And in fact, that's what happened. The police searched the passenger compartment of the car and their attention was only switched to the trunk and to a thorough search of that trunk when the defendant's child spilled the beans and told them that that's where the gun was. But that fact shouldn't be considered because at the time that the defendant hit the gun, he wouldn't have known that that would occur. So likelihood of thwarting is determined from the defendant's perspective at the time of the defendant's conduct? Is that clear from the language of the guideline that that's how we address it? Or is it an objective test based on everything that's known? What was the likelihood that this would thwart the investigation? So I think both of those things are on an objective view of the likelihood based on the facts that as the defendant perceives them to be at the time of the obstructs. In other words, if we think, imagine a hypothetical where the police have a drone that's in the sky, the defendant doesn't know it, and so they see him hide the gun incredibly well in a secret compartment or whatever, but the drone sees him. I still think that the enhancement should cover that conduct. So it's likelihood of thwarting based on what the defendant knows when he engages in the conduct that's at issue. Is that right? Right. That's how we're arguing it. Are there cases making that clear? Is the language of the guideline so clear on that point? I don't know that there's a specific case that lays that out. And I think we would argue that the purpose and the principle of the guideline, which is to provide for a modest enhancement when defendants act culpably in obstructing justice and when there's some sufficient nexus between their conduct and the investigation. And in this case, that nexus is extremely clear. The investigation, even, we have an alternative argument that the investigation had already begun, but even if it hadn't, it was about to. And it was arbitrary from the defendant's, from the perspective of the defendant's culpability about whether the investigation had begun or not because his actions are the same. This is the key point, because the likelihood of thwarting is pretty low if you consider the fact that the victim had seen the defendant open his trunk, had stopped and opened his trunk. Then the likelihood of thwarting is slim. Maybe it's enough we'd have to decide that if that's the legal test. But if it's based on what the defendant knew, then the defendant did not know that he was observed stopping and opening the trunk. And then the likelihood of thwarting would be significantly greater, I would think. So it's important to know what facts we consider in determining the likelihood of thwarting. But there's no, you're relying on your reading of the language of the guideline, not a particular case that says this. Am I correct? I think that's right, Your Honor. I agree with that formulation. I think it's the only one that makes sense in terms of the purpose of the guideline in covering conduct where the defendant's culpability is established and to show that there's a nexus between the defendant's conduct and the investigation. That seems to be the purpose of the obstruction of justice enhancement. And so it makes sense to consider the question based on what the defendant's awareness is. For example, if a defendant asked a colleague to get rid of some evidence at a house and he was being wiretapped at the time, so there was zero chance that taking whatever evidence was out of the house would successfully thwart the investigation, we would consider the fact, or you're saying we wouldn't consider the fact that he was being wiretapped at the time in determining the likelihood of thwarting. Correct, Your Honor. That's our view. And it's clear that that's the case outside the context of comment one. There are cases that we've referred to in our brief where defendants were almost exactly the hypothetical, excuse me, that Your Honor is describing. And defendants try to say, I shouldn't be held responsible for obstructing justice because the police were actually helped by the fact that I called my friend because now they know where the gun is because they overheard my call. And the courts have rejected that. I can see that this is outside the context of note one. But I think it makes clear that the enhancement applies generally when defendants obstruct or attempt to obstruct justice. And it doesn't make sense given the modest two-level enhancement that's designed to deter. I don't know what modest has to do with it. I mean, it's an enhancement, right? I mean, it's going to have sentencing consequences. So we don't need to consider whether it's two or not. That doesn't inform the analysis. Would you agree? I guess I'm using that adjective to try to distinguish, I guess. It's not so modest that they don't want to bring this issue.  That's right. It's an enhancement. It just doesn't matter. It's an enhancement and it matters because we're here. Yes. I agree with that. I guess I'm saying that the analysis might not be the same if we were talking about a conviction for obstruction of justice. But by reminding that it's an enhancement, I'm only trying to bring back to the key question of the defendant's culpability, whether it warrants an enhancement when the defendant acts culpably, even if facts unknown to him make it so that his obstruction is not ultimately going to prevent the police from moving forward in the investigation. In almost every case that ends up before the court getting the enhancement, there's going to be some point at which the obstruction is ineffective. And so the most sensible way to interpret the likelihood of success is, I think, as the facts, as the defendant perceives them to be. If I could briefly address the government's alternative argument. Now, we do think that the most straightforward way for the court to resolve this case is to find that there was no clear error in the district court's finding that the conduct was sufficiently likely to thwart the investigation. And in raising our alternative argument, we concede that we didn't make this argument below. But we're not asking the court to find new facts. We're only asking the court to proceed on the facts that I think are agreed on by both the government and the defendant in this case, which is that at the time the defendant hid the gun, the victims were actively describing his conduct to the dispatcher. Well, is there any real dispute that the correct reading of this record is that everyone understood that we're dealing with Note I, and Note I is about pre-investigation, the specific component of the likely-to-thwart standard in Note I, and we're in pre-investigation land? I think that's right. That's fair to say that below, the arguments below were directed at the application of Note I, and that's what the district court found. So we're not saying that the district court resolved or reached the alternative argument. But this court can reach that alternative argument and has before. But your alternative argument depends on us finding different facts, and facts remain static for purposes of our review. So we would have to endorse the conclusion that this was not pre-investigation, this was during an investigation. Doesn't your alternative argument proceed from that factual premise? It does. But the factual premise that we're asking the court to accept is the one that is agreed upon, which is that the victims were actively describing the conduct to dispatch at the time that the defendant hid the gun. And if the court thinks that that's not sufficient to establish the beginning of an investigation and would have to find additional facts, then we agree that it shouldn't reach the alternative question. But in our view, it's clear that an investigation in the context of a reactive case, where someone reports that there's been a road rage incident, they've pointed a gun at me, and the dispatch receives that report and tells the victims to describe the ongoing actions and location of the defendant, that's an investigation. And that's all we're asking the court to find. What are the facts that you think are not disputed regarding the timing of the call to dispatch and when the victims saw the defendant stop and open his trunk? I think it's undisputed that the call to dispatch occurred before the trunk. The defendants, it's not just undisputed in the testimony of the witness and in the pre-sentence report, but also in the defendant's opening brief, in their recitation of the facts and in their argument, they've relied on the fact that the victims were actively describing his conduct to dispatch at the time when the defendant stopped, opened the trunk, and buried the gun inside of it. So that's the fact that we're relying on as saying that's enough for an investigation. That's the recitation of facts in the opening brief on appeal. Correct. And that argument is made in, or I shouldn't say recitation of facts, I should say in the argument section of the brief on pages 16 and 19 of the opening brief. And so our alternative argument doesn't require the court to find new facts. We're not asking the court to do new fact finding, but only to agree that based on that active describing to dispatch of the defendant's conduct is enough to be the beginning of an investigation. Because when a person does that, that's because the dispatch is seeking evidence about what happened in the conduct that they were reporting. Counsel, is it correct that your main case on this alternative point is Norman? Yes. And how should we be thinking about the fact that that comes before the 2006 amendments when there was no calculated and likely test? That's correct. So Norman isn't directly applicable. It's helpful to us in the sense that the guideline at that time required that the conduct be, quote, during the investigation. And so the court found that an investigation that was, if I could just briefly finish this point, that it's at a similar point at which the police have been summoned to an investigation, and that's all that had happened at the time that the defendant was concealing the evidence. And this court found that that was satisfied during the investigation language that governed at that time. Thank you. Time's expired. Thank you, counsel. Thank you. Beginning with the government's alternative theory. Their first problem is that if they're proceeding under the theory that the passive receipt of information by dispatch is equivalent to investigation, they run headlong into the fact that that's not what investigation means in the guidelines. It's not the ordinary meaning of investigation, and the guidelines uses a different word to describe the passive receipt of information. It uses detection. So they lose under that theory that passive receipt equals investigation. They also lose under the alternative theory that dispatch was somehow directing them to do this and that, therefore, they've been deputized. They lose for the factual reason that that fact is not established in this record as to the chronology of when and if that direction happened. They also lose. Let me make sure I understand. Did not the victim testify that dispatch told him to follow the car? No. Jacob Strickland didn't testify at all. His witness statement, which defense counsel read from, said he talked to various people and they were directing him what to do, and defense counsel's interpretation was they were directing him to get to the right person, and nobody contradicted that because, again, this fact was never of importance to anyone. Well, that's interesting. So the testimony was that he was directed to do something, and you're saying it wasn't to follow the defendant. It was to talk to somebody else. The person with the victim's statement in his hand interpreted it that way, and the prosecutor didn't contradict him. The prosecutor also didn't contradict him. Didn't interpret it in what way? Sorry? You say the person reading the statement interpreted the statement to mean what? That he was being directed as to who the right person was to talk to. The quote from the statement was, I called and talked to a couple people on the phone. And what also wasn't disputed was defense counsel said that directing was happening after the gun had been hidden, and the prosecutor didn't contradict that either. The theory is also legally flawed under this court's reasoning in Peralt, which was the case in which a Catholic priest fled to Morocco when he found a reporter was investigating sexual misconduct allegations. The district court found obstruction on that ground. This court said that disregards the plain language of the guidelines, which requires an investigation by a governmental entity. And so they affirmed on other grounds because he fought extradition, and at that point an investigation was clearly underway. Quickly, we'd like to respond to the issue of what information should be used to determine the likelihood of thwarting. Is it what the defendant knows at the time of his conduct, or what was in fact the situation at the time of his conduct? I think the language likely to thwart clearly denotes an objective standard. Excuse me, is it your position that any time the authorities find what they were looking for, therefore it was not to thwart the investigation? No, not at all. If this gun had been extremely carefully hidden, if they'd had to dismantle the car, if he'd thrown it in the brush and it took three hours for them to find it, then that's the sort of conduct that would have been likely to thwart. What about my question? Anytime they find it in the situation we had, therefore it could not have been used to thwart, even though the defendant thought he was hiding it as good as he could hide it. Well, I think one of the problems with a subjective standard is the defendant, obviously, is always hoping that this is going to not be found. But the fact that it's found doesn't determine the question. This is always going to be a hypothetical based on the likelihood of the conduct. So your view of the wiretap example I gave, when the defendant tells a colleague to hide something, that would not be likely to thwart the investigation if the police happened to be, unbeknownst to the defendant, of course, being wiretapped at the time. You would say, in that circumstance, there was no likelihood that it would thwart the investigation because the police were listening. Because that's similar to what's here. If he did not know that anyone had observed him stop and open his trunk, from that perspective, there would be a likelihood of thwarting. I think it's a difficult question that you pose, Judge Hartz, and I don't think it's a question that's at issue here. The government would have had the burden to show. If they're right that it matters what the defendant knew at this point, then it was their burden to show what he knew. Well, no. Yes. So it seems to me that when you, you know, they'd only gone half a mile, the Stricklands could see him. He then passed them as he, when he finished the gun. When he finished putting the gun in the trunk, he drove right by them again. And so on the facts of this case, it seems highly unlikely that the defendant didn't at least know that the Stricklands had observed him. But it's an objective standard of likelihood to thwart. Thank you. Thank you. The case is submitted.